IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FRAY LYNCH,                           :
                                      :
        Plaintiff,                    :
                                      :        C.A. NO. 06-351 JJF
        v.                            :
                                      :        JURY TRIAL DEMANDED
CITY OF WILMINGTON,                   :
                                      :
        Defendant.                    :

DEFENDANT'S OPENING BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT

Alex J. Mili, Jr., Esquire (I.D. #4125)
Senior Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendant City of Wilmington

Dated:  November 14, 2007

## **TABLE OF CONTENTS**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      1.     LYNCH'S SEXUAL HARASSMENT COMPLAINT AGAINST BROWN . . . . . . . . . 3

      2.     THE CITY'S INVESTIGATION OF LYNCH'S SEXUAL HARASSMENT
            COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      3.     LYNCH'S RETALIATION COMPLAINT AGAINST BROWN . . . . . . . . . . . . . . . . 5

      4.     THE CITY'S INVESTIGATION OF LYNCH'S RETALIATION COMPLAINT . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      1.     THE CITY IS ENTITLED TO SUMMARY JUDGMENT FOR LYNCH'S SEXUAL
            HARASSMENT CLAIM BECAUSE LYNCH HAS FAILED TO ESTABLISH ALL
            FIVE ELEMENTS OF A GENDER-BASED HOSTILE WORK ENVIRONMENT
            UNDER TITLE VII - COUNT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            A.     LYNCH HAS NOT SUFFERED ANY INTENTIONAL, GENDER-BASED
                  DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            B.     THE CONDUCT AT ISSUE WAS NEITHER SEVERE NOR PERVASIVE
                  FROM THE PERSPECTIVE OF AN OBJECTIVELY REASONABLE
                  EMPLOYEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            C.     LYNCH CANNOT ESTABLISH THE CITY'S RESPONDEAT SUPERIOR
                  LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      II.    THE CITY IS ENTITLED TO SUMMARY JUDGMENT FOR LYNCH'S
            RETALIATION CLAIM BECAUSE LYNCH CANNOT ESTABLISH A PRIMA
            FACIE CLAIM UNDER *MCDONNELL DOUGLAS*, NOR CAN LYNCH REBUT M.
            BROWN'S NON-RETALIATORY EXPLANATION FOR THE CONDUCT THAT
            LYNCH PERCEIVES AS RETALIATORY- COUNT II . . . . . . . . . . . . . . . . . . . . . . 14

            A.     LACK OF ADVERSE EMPLOYMENT ACTION . . . . . . . . . . . . . . . . . . . . 14

            B.     LACK OF A CAUSAL NEXUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            C.     THE NON-DISCRIMINATORY JUSTIFICATION FOR THE EMPLOYMENT
                  DECISION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF CITATIONS

### Cases

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242(1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Aratesh v. MBNA*, 146 F. Supp.2d 476(D.Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Baker v. Wilmington Trust Co.*, 320 F. Supp.2d 196(D.Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bray v. Marriott Hotels*, 110 F.3d 986 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Burlington v. White*, ____U.S. _____ , 126 S.Ct. 2405 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Caver v. City of Trenton*, 420 F.3d 243 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (U.S. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*EEOC v. Rite Aid Corp.*, 2005 U.S. Dist. LEXIS 32898 (D. Del. 2005) . . . . . . . . . . . . . . . . . . . . . . 7

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Harris v. Forklift Sys. Inc*, 510 U.S. 17 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Hicks v. St. Mary's Honor Ctr.*, 509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jensen v. Potter*, 435 F.3d 444 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Kidd v. MBNA*, 224 F. Supp.2d 807 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Kunin v. Sears Roebuck & Co.*, 175 F.3d 289 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Mack v. Greenville Ret. Cmty., LLC*, 2001 U.S. Dist. LEXIS 17427 (D. Del. 2001) . . . . . . . . . . . . 8, 9

*McDonnell Douglas Corp. v. Green*, 411 U.S 792 (1973) . . . . . . . . . . . . . . . . . . . 7, 14, 15, 16, 17

*Paris v. Christiana Care*, 197 F. Supp. 2d 111(D. Del. 2002) . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 11, 12

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Poland v. Computer Sciences Corp.,* 2005 U.S. Dist. LEXIS 22618 (D.Del. 2005) . . . . . . . . . . . . . . 7, 9

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Seldomridge v. Uni-Marts, Inc.*, 2001 U.S. Dist. LEXIS 9491(D. Del. 2001) . . . . . . . . . . . . . . . . . 11, 12

*Trunzo v. Ass'n of Prop. Owners of the Hideout, Inc.,* 2004 U.S.App. LEXIS 1639 (3d Cir. 2004)   12, 13

## Court Rules

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## NATURE AND STAGE OF PROCEEDINGS

This is a claim for sexual harassment and retaliation arising under Title VII and its anti-retaliation provisions. Discovery was completed on October 30, 2007.  Plaintiff, Fray Lynch ("Lynch"), contends that a former co-worker, Michael Brown ("M. Brown"), made sexually suggestive statements to her, and later retaliated against her for lodging a formal complaint about those statements.  Lynch filed this lawsuit against her employer, the City of Wilmington ("the City" or "Defendant"), but not M. Brown himself.  This is the City's Opening Brief in Support of its Motion for Summary Judgment.

## SUMMARY OF ARGUMENTS

1.    Lynch's sexual harassment claim must fail as a matter of law because (1) she has not established intentional gender-based discrimination by the City, (2) she has not adduced any evidence that M. Brown's conduct was severe or pervasive from the objective vantage point of a reasonable employee, and (3) the City is not vicariously liable for M. Brown's conduct because remedial measures were taken against M. Brown in response to Lynch's internal complaint.

2.    Lynch's retaliation claim against the City must fail because M. Brown's conduct toward her at an off-site community meeting held after the City's normal business hours does not constitute an adverse employment action by the City.  Even if M. Brown's conduct did constitute an adverse employment action, the City is not liable for that conduct because (1) it occurred in M. Brown's capacity as a private citizen and (2) the non-retaliatory justification for M. Brown's conduct was his concern about lack of police presence in the area.

**STATEMENT OF FACTS**

Lynch has been a police officer for the City of Wilmington since 1999. (Lynch A24) In June of 2004, she was assigned to Weed and Seed community policing.  (Lynch A27-28) As part of this assignment, she was required to visit the William Hicks Anderson Community Center ("WHACC") during her patrol shift. (A28)  Michael Brown ("M. Brown") was employed as Executive Director of the WHACC, until he took office as a City Council Member At-Large on January 4, 2005. (A28)  Lynch had two interactions with M. Brown, for which she lodged complaints with her employer, the City.  Her first complaint alleges that M. Brown sexually harassed her in May of 2004 at WHACC.  Her second complaint alleges that M. Brown retaliated against her at a community meeting that he attended in November of 2004.  (Lynch 38)

1.    LYNCH'S SEXUAL HARASSMENT COMPLAINT AGAINST BROWN

Lynch alleges that in May of 2004, as part of her patrol duties, she went to M. Brown's office at the WHACC. (Lynch 55-56)  According to Lynch, M. Brown said: "Those pants fit nice and tight; you can see everything."  At that point, Gene Brown ("G. Brown"), an employee of WHACC, entered M. Brown's office and the two Browns engaged in horseplay. (A4-5 ) Lynch alleges that G. Brown turned off the lights in the office, and M. Brown said: "With the lights off, now she can do us both." (A5)  G. Brown turned the lights back on and left the office, Lynch contends.  (A5)

Lynch submitted an internal harassment complaint to the City Personnel Department about  this incident. (A5 - 6)  Upon filing that complaint, Lynch was no longer required to go to WHACC as part of her assignment (although she was allowed to remain in community policing, at her request). (Lynch A36)  While Lynch's complaint was under investigation, M. Brown's contact with Lynch was restricted by the City. (Lynch A36) M. Brown was no longer permitted any contact with Lynch unless a higher ranking officer was present.  (Lynch A36)

2.      THE CITY'S INVESTIGATION OF LYNCH'S SEXUAL HARASSMENT COMPLAINT

The Director of Personnel, Monica Gonzalez-Gillespie ("Director Gillespie"), investigated Lynch's first complaint by separately interviewing Lynch, M.Brown and G. Brown. In Lynch's interview, she simply repeated the allegations in her written complaint. Lynch also identified G. Brown as an independent eyewitness. (A 6-10) In M. Brown's interview, he denied all but one of Lynch's accusations. M. Brown admitted that he asked Lynch to "hook a brother up" (referring to Lynch's travel companion). (M. Brown A143-144) G. Brown was separately interviewed, and he did not corroborate any of Lynch's allegations.

Upon completing her investigation, Director Gillespie did not find sufficient evidence to substantiate Lynch's allegations about M. Brown's comments (A6-10). However, because M. Brown admitted to the "hook a brother up" comment, Director Gillespie recommended as follows:

(1) administering a written disciplinary warning to M. Brown;

(2) ordering M. Brown to use the police department's chain of command when contacting Lynch;

(3) prohibiting M. Brown from being in Lynch's presence unless a higher ranking officer or City official is also present;[1] and

(4) directing M. Brown to attend another session of the City's Harassment-Free Work Environment training. (A8)

Accordingly, M. Brown's supervisor, Romain Alexander, instructed him to adhere to each of these four recommendations. A written disciplinary warning was placed in M. Brown's personnel file. (A12-13) That warning specifically instructed M. Brown (1) to utilize the chain of command for any contact with Lynch and (2) to have no contact with Lynch unless a higher ranking officer is present. (A12) M. Brown also attended the Harassment-Free Work Environment training, as instructed. (A12) M. Brown had no further contact with Lynch on City property or during the City's normal business hours. (Lynch A36)

---

[1] Although Director Gillespie did not conclude her investigation until December 7, 2004, Lynch was immediately relieved of her obligation to go to WHACC after she filed her internal complaint in June of 2004.

3.     LYNCH'S RETALIATION COMPLAINT AGAINST BROWN

Lynch did not have any further contact with M. Brown until November 23, 2004, when she went to a community meeting of the West Center City Neighborhood Planning Advisory Council ("WCCNPAC"). (Lynch A38)  This was an evening meeting that took place at approximately 6:30 p.m., and it was open to the public.  Members of City Council and citizens concerned about community affairs attended this meeting. (Lynch A38-39)

Marcia Starks ("Starks"), a Community Affairs Advisor for the City, also attended these meetings. (Starks A63 - 79) Starks described this meeting as contentious, in that many attendees (not just M. Brown) were yelling and speaking in loud tones.  (Starks A84) The attendees were concerned about the lack of police presence in the West Center City area.  (Starks A79)  One citizen at this meeting raised the issue of why Weed and Seed police officers were being deployed from West Center City to other areas of the City. (Lynch A40)  When this issue was raised, Lynch explained that police officers were not being deployed from the area, but were expected to assist in other areas during emergencies.  (Lynch A40) Lynch alleges that M. Brown interrupted this explanation and told her that she was lying.  (Lynch A41)

M. Brown admits that he was critical of the lack of police presence when he spoke at this meeting. However, M. Brown was speaking in his capacity as a private citizen, not as a City Council member-elect or an employee of WHACC.  (M. Brown A133) In fact, this meeting took place after M. Brown's normal business hours at WHACC.  (M. Brown A133)  According to Starks, M. Brown's criticisms were aimed toward police officers generally.  (Starks A84-85)  Nonetheless, Lynch filed a second internal complaint, alleging that M. Brown's comments at this community meeting were in retaliation for her previous complaint about sexual harassment. (A16-19)

4.    THE CITY'S INVESTIGATION OF LYNCH'S RETALIATION COMPLAINT

Upon receiving Lynch's second complaint against M. Brown, regarding his conduct at the community meeting, Director Gillespie conducted a second investigation.  She interviewed Lynch, M. Brown, and the following four attendees of the community meeting: Officer Michael Groark, Lynch's patrol partner; Marcia Starks, a community affairs advisor; Charles Freel, an at-large member of City Council; and Hanifa Shabazz, the Fourth District City Council member.  Lynch reiterated the contents of her written complaint during her interview.  (A16-19)  M. Brown admitted that he accused Lynch of lying about the Weed and Seed officers' deployment out of West Center City.  M. Brown denied that he used a demeaning or belittling tone.  (A16-19)  Groark and Freel described M. Brown's tone as loud and accusatory.  (A16-19)

Upon completing her investigation and interviews, Director Gillespie concluded that M. Brown's conduct at the community meeting could be viewed as retaliatory.  (A18)  By this time, M. Brown had been inaugurated to City Council and he resigned his position at WHACC.  For that reason, the City Personnel Department no longer had any disciplinary authority over M. Brown.  Director Gillespie forwarded the matter to Theodore Blunt, the President of City Council.  (A20-21)

Although the Personnel Department no longer had the power to discipline M. Brown, Director Gillespie did admonish M. Brown: "This behavior was inappropriate and not acceptable under the City's Harassment-Free Work Environment Policy." (A20)  In response to that admonition, M. Brown's attorney provided some context for the community meeting at issue.  According to M. Brown's attorney:

> [T]he meeting about which Officer Lynch complains was not a workplace occurrence for [M. Brown].  It was a meeting which he attended as a public spirited citizen.  Mr. Brown was not attending the meeting in his capacity as a City employee.          (A11)

In his deposition, M. Brown also confirmed under oath that he attended the community meeting as a private citizen concerned about the lack of police presence in the City.  (M. Brown A188)

**ARGUMENT**

The City is entitled to judgment as a matter of law on both counts of Lynch's Complaint. First, the sexual harassment claim in Count I fails because Lynch cannot establish all five required elements of a gender-based hostile work environment under Title VII. Second, the retaliation claim in Count II fails because Lynch cannot establish an adverse employment action or a causal nexus under *McDonnell Douglas*, nor can Lynch rebut M. Brown's non-retaliatory explanation for the actions that she perceives as retaliatory.

Because there are no genuine issues of any material facts, the City is entitled to summary judgment on both counts. An issue is only genuine when "a reasonable jury could possibly find in favor of the non-moving party with regard to that issue." *See EEOC v. Rite Aid Corp.*, 2005 U.S. Dist. LEXIS 32898,*2 (D. Del. 2005)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)). A fact is only material if it affects the outcome of the lawsuit. *Id.* (citing *Anderson,* 477 U.S. at 248). This court has consistently reaffirmed that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Rite Aid Corp.,* 2005 U.S. Dist. LEXIS 32898, *1-2 (D. Del. 2005)(quoting Fed. R. Civ. P. 56(c)).

To overcome summary judgment, the non-movant "must demonstrate the existence of a material fact supplying sufficient evidence – not mere allegations – for a reasonable jury to find for the non-movant." *See Poland v. Computer Sciences Corp.,* 2005 U.S. Dist. LEXIS 22618, *2 (D.Del. 2005). Lynch's failure to meet this burden necessitates summary judgment for the City.

I.    THE CITY IS ENTITLED TO SUMMARY JUDGMENT FOR LYNCH'S SEXUAL HARASSMENT CLAIM BECAUSE LYNCH HAS FAILED TO ESTABLISH ALL FIVE ELEMENTS OF A GENDER-BASED HOSTILE WORK ENVIRONMENT UNDER TITLE VII - COUNT I

Lynch's hostile work environment claim fails because Lynch has not suffered any intentional, gender-based discrimination that was severe, pervasive, or objectively detrimental, nor can Lynch establish the City's vicarious liability for M. Brown's conduct.  A prima facie claim of a hostile work environment under Title VII requires an employee to establish the following five elements: (1) the employee was subjected to intentional discrimination due to gender; (2) the conduct was severe or pervasive; (3) the conduct detrimentally affected the employee; (4) the conduct would have detrimentally affected a reasonable person of the employee's gender; and (5) the employer is vicariously liable.  *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990).  Lynch's claim fails because she cannot establish all five above-listed elements (although failure to establish even one element defeats her claim).  *See Aratesh v. MBNA*, 146 F. Supp.2d 476, 493 (D.Del. 2001)(confirming that failure to establish any one of the five elements of a hostile work environment defeats the entire Title VII claim).

A.    LYNCH HAS NOT SUFFERED ANY INTENTIONAL, GENDER-BASED DISCRIMINATION

With regard to the first prong, one offensive comment from M. Brown to Lynch is not enough to establish intentional gender-based discrimination for a hostile work environment under Title VII.  According to *Mack v. Greenville Ret. Cmty., LLC*, 2001 U.S. Dist. LEXIS 17427, *10 (D. Del. 2001), "[m]ere 'offhand comments and isolated incidents' are not sufficient to set forth a claim for a hostile work environment."  *See also Paris v. Christiana Care*, 197 F. Supp. 28 111, 117 (D.Del. 2002)("[T]he mere utterance of an epithet, joke, or inappropriate taunt that may cause offense is not actionable under Title VII.").  Lynch's allegation is that in May of 2004, M. Brown did the following:  (1) told her that her pants "fit nice and tight," (2) asked her to "hook a brother up", and (3) suggested that "with the lights out she can do us both" (referring to himself and a colleague).  Lynch identified one eyewitness, Gene Brown ("G. Brown"), who did not corroborate

Lynch's allegations.  Even if these allegations are true (despite the fact that Lynch's own eyewitness denies

them), this one incident is too isolated to establish the first prong of a hostile work environment claim.

Though M. Brown admitted to the "hook a brother up" comment, Lynch cannot identify any corroborating

evidence of the remaining comments.  *See Poland,* 2005 U.S. Dist. LEXIS 22618, at *2 ("[the non-movant]

must demonstrate the existence of a material fact supplying sufficient evidence - not mere allegations - for

a reasonable jury to find for the non-movant.").   A non-movant cannot overcome summary judgment by

simply resting on the uncorroborated allegations in the pleadings.  In light of *Mack* and *Paris*, M. Brown's

admission to the "hook a brother up" comment is not sufficient to establish the first prong of a hostile work

environment.

B.    THE CONDUCT AT ISSUE WAS NEITHER SEVERE NOR PERVASIVE FROM THE
PERSPECTIVE OF AN OBJECTIVELY REASONABLE EMPLOYEE

Another ground for summary judgment is Lynch's failure to establish the second and fourth prongs

of a hostile work environment – "severe or pervasive"[2] conduct that would affect a reasonable employee of

Lynch's gender.[3]  Proof of a hostile work environment requires that workplace conduct was so severe or

pervasive as to alter the conditions of employment.  *See Paris v. Christiana Care*, 197 F. Supp. 2d 111, 118

(D. Del. 2002)(dismissing a Title VII claim for failure to prove severe or pervasive conduct).    The Third

Circuit has cautioned that the heightened "severe or pervasive" standard requires the courts to protect

employers from unnecessary lawsuits from hypersensitive employees.  *See Andrews,*  895 F.2d at 1483.  That

heightened standard was succinctly stated by this Court in *Kidd v. MBNA*, 224 F. Supp.2d 807, 814 (D. Del.

2002): "[m]ore than a few isolated verbal incidents are necessary to establish that defendant is engaging in

regular, pervasive discrimination that would detrimentally affect a reasonable person of the same race or sex

---

[2]Earlier Third Circuit decisions label this prong as the "regular and pervasive" standard.  However, this
Court in *Arasteh v. MBNA*, 146 F. Supp.2d 476, 494, n.36 (D.Del. 2001), confirmed that this prong has evolved into
the "severe and pervasive" standard after the U.S. Supreme Court's pronouncement in *Clark County Sch. Dist. v.
Breeden*, 532 U.S. 268 (U.S. 2001).

[3]The City does not dispute the third prong - - that Lynch was subjectively affected by M. Brown's conduct.

in that position." The Third Circuit in *Jensen v. Potter*, 435 F.3d 444, 451 (3d Cir. 2006), has illustrated that "[o]ccasional insults, teasing, or episodic instances of ridicule are not enough; they do not 'permeate' the workplace and change the very nature of plaintiff's employment." Additionally, the severity of the conduct must rise to a level that would detrimentally affect a reasonable person in Lynch's position. *See Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview.").

Though Lynch subjectively claims that M. Brown's alleged conduct offended her, Title VII liability turns on whether the conduct would be objectively detrimental to a reasonable person. The U.S. Supreme Court in *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), underscored the importance of objective standards in Title VII claims:

> We refer to reactions of a *reasonable* employee because we believe that [Title VII's anti-retaliation] provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.

> *Id.* at 2415 (emphasis in original).

The objective component "further distinguishes Title VII from a generalized civility code." *See Jensen v. Potter*, 435 F.3d at 451. The *Jensen* court further cautioned that "[Title VII] does not mandate a happy workplace." *Id.*

Lynch's allegation about one encounter with M. Brown does not establish severe or pervasive conduct. Lynch was immediately relieved of any further contact with M. Brown once she filed an internal complaint, even as Director Gillespie's investigation was still pending. (Lynch 36) In *Paris,* this Court held that six incidents over the span of four months are not frequent enough to establish severe or pervasive conduct. *See Paris,* 197 F. Supp.2d at 118. Lynch points to only the incident at WHACC for which she lodged a complaint. Even if she could prove this allegation (despite the fact that G. Brown denies it), it

-10-

would be insufficient to meet the "severe and pervasive" standard.  Rather, the Court must examine the totality of circumstances, including the frequency of M. Brown's conduct, whether the conduct was physically threatening, and whether it interfered with the employee's work.  *Paris*, 197 F. Supp. 2d at 118-119.

As for physically threatening conduct, the *Paris* court explained that "although comments made were not in the best taste, at no point was [the employee] subject to any physical conduct that might reasonably be described as abusive or inappropriate."  *Id.* 197 F. Supp.2d at 118.  The same is true of Lynch's allegations about M. Brown, which were limited to one instance of unwelcome comments to Lynch. (A59-105)  This court has recognized that "[o]rdinary tribulations of the workplace, such as the sporadic use of abusive language . . . and occasional teasing, are not actionable."  *See Seldomridge v. Uni-Marts, Inc.*, 2001 U.S. Dist. LEXIS 9491 *30-31 (D. Del. 2001).  Thus, M. Brown's comments to Lynch in May of 2004, while admittedly in poor taste, were not physically threatening.

As for interference with work performance, the *Paris* court explained that even if an employer's comments cause an employee some distress, this factor only supports the "severe or pervasive" prong if a reasonable person in the employee's position would be so offended that she could not perform her job.  *Paris*, 197 F.Supp. 2d at 117.   In Lynch's case, she was relieved of any contact with M. Brown as soon as she lodged an internal complaint. (Lynch A36)  Because M. Brown's contact ceased immediately after Lynch filed her complaint, M. Brown had no opportunity to interfere with Lynch's work performance.

With regard to Lynch's psychological well-being, the U.S. Supreme Court in *Harris v. Forklift Sys. Inc*, 510 U.S. 17, 21 (1993), recognized that "while psychological harm, like any other relevant factor, may be taken into account, no single factor is required."  Consistent with *Harris*, this Court in *Seldomridge* observed that "a plaintiff's subjective feelings and personal reactions are not the complete measure of whether conduct is of a nature that it interferes with job performance."  This factor weighs in favor of the

City because Lynch admits she did not have any stress from the June 2004 incident.[4]  (Lynch A33)

The totality of the four above-cited factors, as applied to Lynch's claim, fails to establish severe or pervasive conduct that is objectively unreasonable.  Summary judgment was granted for the employers in *Paris, Kidd* and *Seldomridge* because the employees in those cases failed to establish any conduct that was frequent, physically threatening or an unreasonable interference with the employee's work.  Because Lynch has similarly failed to establish any severe or pervasive conduct, this is yet another reason why the City is entitled to summary judgment.

C.    LYNCH CANNOT ESTABLISH THE CITY'S RESPONDEAT SUPERIOR LIABILITY

The fifth prong of Lynch's hostile work environment claim fails because she cannot establish the City's respondeat superior liability for M. Brown's conduct.  Respondeat superior liability under Title VII turns on whether the harasser is a supervisor or a co-worker.  *See Jensen v. Potter*, 435 F.3d 444, 452-453 (3d Cir. 2006).  Because M. Brown was not Lynch's supervisor, the fifth prong of her Title VII claim must be analyzed as a co-worker harassment case.  An employer's respondeat superior liability for co-worker harassment turns on whether it  "knew or should have known of the harassment and failed to take prompt remedial action."  *See Trunzo v. Ass'n of Prop. Owners of the Hideout, Inc.,* 2004 U.S.App. LEXIS 1639, *10 (3d Cir. 2004).  In *Trunzo*, the employee first complained about alleged harassment on June 24, 1999.  *Id.* at *4.  The employee in *Trunzo* could not cite any incidents of harassment that occurred after that date.  *Id.* at *6.  Accordingly, the Third Circuit in *Trunzo* held that the employee did not establish respondeat superior liability because no acts of harassment occurred after her employer knew or had reason to know of her complaint.  *See also Kunin v. Sears Roebuck & Co.*, 175 F.3d 289 (3d Cir. 1999)(dismissing an employee's Title VII claim for failure to show actual or constructive notice of harassment).

As in *Trunzo* and *Kunin,* the timing of Lynch's complaint defeats respondeat superior liability.

_____

[4]Lynch only claims stress from the November 2004 incident, in which Brown, in his capacity as a private citizen, accused Lynch of lying.

Lynch submitted her internal complaint on June 2, 2004. That was the first date when the City knew or had reason to know of Lynch's complaints about M. Brown. Although Lynch claims that M. Brown accused her of lying at a community meeting on November 23, 2004, Lynch does not claim that M. Brown made any sexually suggestive statements during that encounter.[5] Consequently, Lynch cannot establish the City's respondeat superior liability because she cannot identify any discrete incidents of sexual harassment that occurred after June 2, 2004.

An employer is not vicariously liable for a hostile work environment if it proves "both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of [Title VII-based] harassment, and (2) that the [employee] unreasonably failed to avail [himself] of that employer-provided preventative or remedial apparatus." If a co-worker creates the hostile work environment, the employer is only liable if it knew or should have known about the harassment. *Id.* at 453. If a supervisor creates the hostile work environment, liability turns on whether the supervisor's acts are "official" or "unofficial." *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). Consistent with *Suders*, the City has implemented a policy for reporting and resolving complaints of workplace harassment. (A2-3) When Lynch availed herself of that policy, she was immediately relieved of any contact with M. Brown. (Lynch A36) The City Personnel Department conducted an investigation, which included interviews of Lynch, M. Brown, and G. Brown (the eyewitness identified by Lynch). (A7-8) Lynch's own eyewitness, G. Brown, denied Lynch's version of events. Nonetheless, M. Brown admitted that he made the comment "hook a brother up," and he was formally disciplined for that comment. (M. Brown A142-144) Consequently, based on *Suders*, *Trunzo*, and *Kunin*, none of Lynch's allegations establishes respondeat superior liability for co-worker harassment. Because respondeat superior liability is the indispensable fifth element of a hostile work environment claim, its absence is another reason why the City is entitled to summary judgment.

---

[5] Lynch only alleges that the encounter at the community meeting constitutes retaliation, which will be separately addressed in Section II of this Brief.

II.     THE CITY IS ENTITLED TO SUMMARY JUDGMENT FOR LYNCH'S RETALIATION CLAIM
        BECAUSE LYNCH CANNOT ESTABLISH A PRIMA FACIE CLAIM UNDER *MCDONNELL
        DOUGLAS*, NOR CAN LYNCH REBUT M. BROWN'S NON-RETALIATORY EXPLANATION
        FOR THE CONDUCT THAT LYNCH PERCEIVES AS RETALIATORY- COUNT II

        Lynch's retaliation claim fails because she cannot meet the tripartite *McDonnell Douglas* burden of

proof.  *See McDonnell Douglas Corp. v. Green*, 411 U.S 792, 802 (1973).  *McDonnell Douglas* imposes

three prongs upon the employee for a prima facie claim of retaliation: (1) the employee engaged in protected

activity; (2) the employer took an adverse employment action against the employee; and (3) there is a causal

nexus between the protected activity and the adverse employment action.  *Id.*  "Whether [the employee] has

established a prima facie case of retaliation is a question of law for the court."  *See Baker v. Wilmington

Trust Co.*, 320 F. Supp.2d 196, 200 (D.Del. 2004).

        If a retaliation plaintiff satisfies these three prima facie elements (which Lynch cannot), the employer

must then demonstrate a legitimate, non-retaliatory reason for the employment action at issue.  *McDonnell

Douglas*, 411 U.S. at 799.  Once the employer proffers a non-retaliatory reason, the ultimate burden shifts

back to the employee, who is then obligated to disprove the employer's proffered justification.  *Id.*

        Lynch's retaliation claim fails the *McDonnell Douglas* test for three reasons.  First, M. Brown's

comments to Lynch at the community meeting, in M. Brown's capacity as a private citizen (as opposed to

a City employee), do not constitute an adverse employment action by the City.  Second, M. Brown's

comments have no causal connection to Lynch's protected activity of filing a harassment complaint.  Third,

Lynch cannot rebut the non-retaliatory reason for M. Brown's comment - M. Brown's professed concern

about the lack of police presence in West Center City.  (M. Brown A142-144)

        A.      LACK OF ADVERSE EMPLOYMENT ACTION

        As for any adverse action to satisfy the second prong of *McDonnell Douglas*, Lynch cites M.

Brown's comments during his attendance at a community meeting in his capacity as a private citizen after

the City's normal business hours.  Although Lynch makes this allegation against M. Brown, she cannot cite

any adverse action taken by her employer, the City of Wilmington.  M. Brown is not a defendant in this case,

-14-

and the City cannot be responsible for what its employees do after work when not on City property. Moreover, "[r]etaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *See Caver v. City of Trenton*, 420 F.3d 243, 255 (3d Cir. 2005). M. Brown's comments do not rise to that level because "oral reprimands and derogatory comments do not qualify as adverse employment actions for purposes of establishing a prima facie case of retaliation." *See Scott v. State of New Jersey*, 2005 U.S.App. LEXIS 15856, *9-10 (3d Cir. Aug. 1, 2005).

  B.  <u>LACK OF A CAUSAL NEXUS</u>

  As for the third prong of *McDonnell Douglas*, the record in this case confirms that M. Brown's conduct at the community meeting lacks any causal link to Lynch's sexual harassment complaint. The community meeting at issue was generally contentious, with specific criticism toward the police lodged from other attendees, not just M. Brown. (Starks A25-26 ) As Marcia Starks explained, the general tone of this meeting was accusatory. (Starks A25) Other attendees (not just M. Brown) also criticized the lack of police presence. (Starks A20) Starks also confirmed that the criticisms were directed at the police generally. (Starks A20 & 28) This rules out Lynch's claim that M. Brown's comments were somehow tied to Lynch's internal complaint against him, or that M. Brown's comments were even tied to Lynch personally. Lynch also concedes that it was not M. Brown who initiated this conversation about the lack of police presence. (Lynch A40) It was one of the citizen attendees who initiated this topic of conversation. (Lynch A40) Therefore, Lynch has not adduced evidence of a causal nexus between M. Brown's behavior at this community meeting and Lynch's internal complaint five months earlier.

  C.  <u>THE NON-DISCRIMINATORY JUSTIFICATION FOR THE EMPLOYMENT DECISION</u>

  Even if Lynch could establish a *prima facie* case of retaliation (which she cannot), the non-retaliatory explanation for M. Brown's conduct is his concern about the lack of police presence in West Center City. (M. Brown A191-192) The Third Circuit has held that a retaliation defendant's burden is satisfied "if it introduces evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory

reason for the unfavorable employment decision." *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). "The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes*, 32 F.3d at 763. In light of this retaliatory explanation for M. Brown's conduct, the burden of persuasion shifts back to Lynch. *See McDonnell Douglas*, 411 U.S. at 802.

Lynch cannot meet her ultimate burden of persuasion without adducing "evidence from which a reasonable fact finder could conclude either that the defendant's proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination." *See Bray v. Marriott Hotels*, 110 F.3d 986, 990 (3d Cir. 1996). This burden requires "some evidence, direct or circumstantial, from which a fact finder could either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. "This is a more onerous burden of persuasion for a retaliation plaintiff, in that it turns the inquiry 'from the few generalized factors that establish a prima facie case to the specific proofs and rebuttals of discriminatory motivation the parties have introduced.'" *Hicks v. St. Mary's Honor Ctr.*, 509 U.S. 502, 516 (1993). Lynch cannot meet this burden of persuasion because the record is devoid of any evidence suggesting that M. Brown's conduct was retaliatory. Even if this conduct is viewed as retaliatory, Lynch cannot establish that the City ratified or acquiesced to this conduct, which occurred off-site and after the City's normal business hours. Consequently, Lynch's failure to establish the *McDonnell Douglas* paradigm entitles the City to summary judgment for the retaliation claim.

## <u>CONCLUSION</u>

_____Lynch's sexual harassment claim, as set forth in Count I, must fail as a matter of law because she has not established intentional gender-based discrimination, nor has she established any severe or pervasive conduct that would be objectively detrimental to a reasonable employee. Even if she had, Count I would still fail because the City took remedial measures in response to Lynch's complaint, thereby ruling out the City's vicarious liability for Lynch's co-worker's conduct.

Lynch's retaliation claim, as set forth in Count II, must fail as a matter of law because she has not established any adverse employment action (or any "employment" action whatsoever) or a causal nexus to her complaint about sexual harassment. Even if she had, Lynch cannot rebut the non-retaliatory explanation for the conduct that she perceives to be retaliatory.

_____/s/ Alex J. Mili, Jr._____
Alex J. Mili, Jr., Esquire (I.D. #4125)
Senior Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendant City of Wilmington

-17-

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

FRAY LYNCH,                          :
                                     :
              Plaintiff,             :
                                     :        C.A. NO. 06-351 JJF
       v.                            :
                                     :        JURY TRIAL DEMANDED
CITY OF WILMINGTON,                  :
                                     :
              Defendant.             :

**<u>CERTIFICATE OF SERVICE</u>**

       I, Alex J. Mili, Jr, Esquire, hereby certify that on this 14th day of November, a copy of Defendant's

Opening Brief in Support of its Motion for Summary Judgment was served with the Clerk of Court using

CM/ECF which will send notification of such filing(s) to the following and that these documents are

available for viewing and downloading from CM/ECF

G. Kevin Fasic, Esquire              Robert T. Vance, Jr., Esquire
Law Office of G. Kevin Fasic         Law Offices of Robert T. Vance, Jr.
1225 King Street, Suite 200          100 South Broad Street , Suite 1530
Wilmington, DE 19801                 Philadelphia, PA 19110

                                     CITY OF WILMINGTON LAW DEPARTMENT

                                     /s/ Alex J. Mili, Jr.
                                     ALEX J. MILI, JR., ESQUIRE (I.D. #4125)
                                     Senior Assistant City Solicitor
                                     Louis L. Redding City/County Building
                                     800 N.  French Street, 9th Floor
                                     Wilmington, DE 19801
                                     (302) 576-2175